IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-00280-RJC
(3:11-cr-00112-RJC-1)

| | |
|---|---|
| ERIKA HOLLAND, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence filed pursuant to 28 U.S.C. § 2255, and the Government's Motion for Summary Judgment. For the reasons that follow, the Motion for Summary Judgment will be granted and Petitioner's § 2255 Motion to Vacate will be denied and dismissed.

I. BACKGROUND

Petitioner was indicted in this District on six counts related to a health care fraud conspiracy, in violation of 18 U.S.C. § 1349, and money laundering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1957 and 2. In particular, the indictment alleged that Petitioner, Joanna Patronis, Giraud Hope and others orchestrated a scheme to defraud the North Carolina Medical Assistance Program (Medicaid) from 2009 to 2010 in Mecklenburg and Gaston Counties by opening businesses through which they submitted fraudulent claims to Medicaid resulting in a loss to Medicaid in excess of $1,000,000. (3:11-cr-00112, Doc. No. 1: Indictment).

Following the return of her indictment, Petitioner was arrested and during her initial appearance, the court appointed Peter Adolf and Angela Parrott of the Federal Defenders Office

1

to represent her. Petitioner then entered into a plea agreement in which she agreed to plead guilty to one count of health care fraud conspiracy (Count 1) and one count of money laundering and aiding and abetting (Count 4), and the Government agreed to dismiss the remaining counts in her indictment if her plea was accepted. (Id., Doc. No. 18: Plea Agreement).

Petitioner appeared for her Plea and Rule 11 hearing before the magistrate judge and she was placed under oath and the elements of Counts 1 and 4 were explained to her along with the potential penalties and she averred that she understood the charges and consequences of her guilty plea. The Government summarized the terms of the plea agreement and Petitioner agreed that she had discussed the terms of the agreement with counsel and that she understood and accepted the terms of the agreement. Petitioner admitted that she was in fact guilty of the conduct charged in Counts 1 and 4 and that she was knowingly waiving her right to contest the charges at trial. Petitioner swore that she was satisfied with the services of her counsel and that no one had threatened, coerced, or promised her anything in exchange for her decision to enter her guilty plea. Petitioner reviewed the written acceptance of plea form and signed the form agreeing that her answers were true and her plea was accepted after the court found that the plea was knowing and voluntary. (Id., Doc. No. 20: Acceptance and Entry of Guilty Plea; Doc. No. 47: Tr. of Aug. 24, 2011 Plea Hearing; Doc. No. 48: Tr. of Sept. 2, 2011 Plea Hearing).[1]

In Petitioner's Presentence Report, the probation officer found a base offense level of six and added sixteen points based on the amount of loss involved in the conspiracy. A one-level

---

[1] The plea was accepted after two Plea hearings were cancelled, first because Petitioner stated that she had been intimidated into accepting the plea and second, when she stated that she was not satisfied with the services of her counsel. The third hearing was convened shortly after the second was cancelled and the court conducted the hearing *de novo* before accepting the plea.

2

enhancement was applied because of her money laundering activity and a two-level enhancement was applied because the evidence showed that Petitioner lied before the grand jury during her testimony there. After adjusting for acceptance of responsibility, the probation officer found that Petitioner's total offense level was 21 and with a criminal history category III, her Guidelines range was 46 to 57 months in prison. (Id., Doc. No. 25: Presentence Report).

During Petitioner's sentencing hearing, the parties stipulated that the offense conduct that was set forth in the Presentence Report established the factual basis to support the entry of her guilty plea, and after reviewing the Rule 11 proceedings the Court found that the plea was knowing and voluntary, and that there was a factual basis for the guilty plea and the plea was therefore accepted. Petitioner was sentenced to concurrent terms of 54 months in prison and ordered to pay $1,585,093.00 in restitution jointly and severally with co-conspirators Joanna Patronis and Giraud Hope. Petitioner did not appeal. (Id., Doc. No. 31: Judgment).

In this § 2255 proceeding, Petitioner raises three claims of ineffective assistance of counsel which will be examined herein.

II. STANDARD OF REVIEW

A. Section 2255 Proceedings

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

3

B.  Summary Judgment

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

A. Ground One

Petitioner first contends that Mr. Adolf disclosed her confidential information to AUSA Kelli Ferry after Adolf was appointed to represent following her receipt of a 'target letter," and Petitioner contends that Mr. Adolf was verbally abusive; intimidated her; failed to follow her instructions; and never took an interest in her case.[2] (3:12-cv-00280, Doc. No. 1: § 2255 Motion at 3).

1. Evidentiary hearing

---

[2] After Petitioner filed her § 2255 motion, the Court ordered an evidentiary hearing and Petitioner was present with counsel for the hearing.

5

a. Peter Adolf

During the evidentiary hearing on Petitioner's claims, Mr. Adolf testified that he learned Federal authorities received information about the healthcare fraud conspiracy in or about 2009, and opened an investigation and Petitioner later received a target letter which informed her about the existence of the ongoing investigation.[3] The letter explained that the investigation had amassed evidence of her possible involvement in the health care fraud conspiracy and invited Petitioner to appear with counsel to speak with the Government about the investigation. Petitioner approached the Federal Defenders of North Carolina with the letter and Mr. Adolf was appointed to represent her by the magistrate judge.

Mr. Adolf testified that he and Petitioner had dozens of conversations regarding the ongoing investigation in person, by phone and through email. Mr. Adolf advised her of the activities that were being investigated and the potential consequences she could face if she were charged and convicted as a result of the investigation. Mr. Adolf explained that he discussed the possibility of a plea deal prior to indictment with Petitioner who stated early in his representation that she was eager to discuss a deal and to cooperate with the Government's investigation. Mr. Adolf also testified that he had numerous discussions with AUSA Ferry about Petitioner's interest in pursuing plea negotiations and in cooperating with the Government prior to the return of an indictment.

However, even though Petitioner expressed an interest in cooperating with the

---

[3] While testifying, Mr. Adolf expressed reservations about disclosing confidential client communications but the Court found that Petitioner had waived the attorney-client privilege by raising claims that he provided ineffective assistance and Mr. Adolf was ordered to testify. The Court made the same findings regarding Ms. Parrott who also testified during the hearing. (3:12-cv-00280, Doc. No. 14: Evidentiary Tr.).

Government, Mr. Adolf testified that he did not immediately arrange a meeting with Petitioner and the Government in part, because he did not believe that Petitioner was being fully truthful about her involvement in the conspiracy, and he was concerned that if she gave information that conflicted with the Government's evidence, a favorable plea offer might be withdrawn and she would lose her opportunity for a downward departure for substantial assistance. Mr. Adolf also expressed concern that if Petitioner provided false information to the Government it would result in other adverse consequences such as a charge for obstruction of justice and the application of other sentencing enhancements.

b. AUSA Ferry

During her testimony, AUSA Ferry described her interactions with Mr. Adolf and Petitioner after Mr. Adolf's appointment. ASUA Ferry explained that she had approximately a dozen discussions with Mr. Adolf prior to indictment. In the discussions, Mr. Adolf explored the opportunity for a plea prior to indictment and he explained that Petitioner had expressed an interest in cooperating with the Government, although Mr. Adolf explained to her that he did not immediately arrange for a meeting with the agents because he was still reviewing the discovery. AUSA Ferry also testified that Mr. Adolf stated that some of the information Petitioner was providing to him was at odds with the Government's theory of the case, and he wanted additional time to talk with Petitioner prior to presentation of the case to the grand jury. During the evidentiary hearing, the Government also introduced an email as Government's Exhibit 1 that was from Mr. Adolf to AUSA Ferry which noted that Petitioner had given him information that contradicted information he had seen in the discovery pertaining to information provided by co-conspirators Patronis and Hope to the Government. (Id., Evidentiary Tr. at 36). When asked

7

whether Mr. Adolf ever disclosed any confidential information to her or expressed that he believed that Petitioner was lying, AUSA Ferry testified, "No." (Id. at 38).

        2.        Findings of Fact

The Court finds that after considering the testimony and observing the demeanor of Mr. Adolf and AUSA Ferry during the evidentiary hearing that their testimony is credible and the evidence shows that Mr. Adolf did not disclose confidential information to AUSA Ferry nor did he inform AUSA Ferry that Petitioner did not wish to cooperate with the investigation or that he believed that Petitioner was being untruthful with him. Regarding this latter point, the testimony tends to show that Mr. Adolf was careful to secure additional time to examine the discovery prior to indictment to try and sort out what evidence the Government had compiled against not only his client but against the co-conspirators. Accordingly, any concerns that Mr. Adolf expressed to AUSA Ferry regarding potential discrepancies in the discovery and Petitioner's professed involvement are of no moment because it appears they are simply observations that any competent attorney would make, and Petitioner offers no evidence that discussing the nature of the discovery with AUSA Ferry prejudiced her in anyway.

The Court further finds from Mr. Adolf's testimony that he expended great effort to protect Petitioner's interests by trying to prevent her from giving potentially damaging information to the Government which he believed was dangerously at odds with the discovery he had reviewed with Petitioner. The evidence shows that Mr. Adolf was rightly concerned that if Petitioner provided this information it could expose her to further criminal liability and damage her chance for a favorable plea. Finally, the Court finds Mr. Adolf's testimony credible that he did not try and intimidate Petitioner or call Petitioner a liar.

In sum, the Court notes that Petitioner did not testify during the evidentiary hearing and her one-paragraph assertion in her § 2255 motion, although made under penalty of perjury, regarding Mr. Adolf's conduct as discussed herein, is not credible based on the evidence received by the Court and her first claim for relief will therefore be denied.

B.   Ground Two

Here, Petitioner claims that Ms. Parrott coerced her into signing the plea agreement by promising her that she would take care of Petitioner's child while she was in custody. (Id., § 2255 Motion at 5). Petitioner contends that if Ms. Parrott had not made this promise, then she would have elected to proceed to trial rather than accept a plea offer. This argument will be rejected for two reasons.

In her September 2, 2011, plea hearing Petitioner stated that she was not satisfied with the services of Ms. Parrott because she initially promised that she would care for Petitioner's daughter and bring her daughter to see her while she was incarcerated, but Ms. Parrott later explained several days before the plea hearing that she would not be able to do that. (3:11-cr-00112, Doc. No. 48: Tr. of Plea and Rule 11 Hearing at 9). Petitioner's claim here fails because even if true, Petitioner would have been informed that Ms. Parrott would not be able to care for her daughter several days before she entered her guilty plea therefore she could not have been coerced or induced into the taking the plea based on something she knew was not going to occur.

Moreover, this argument is plainly belied by Petitioner's sworn statements during the plea hearing where she was under oath and swore that no one had threatened, intimidated or forced her to enter her guilty plea. Petitioner's contention that Ms. Parrott promised her years of child care is tantamount to Petitioner contending she was coerced or forced into signing the

9

agreement and foregoing trial in an effort to secure a suitable environment for her child during her incarceration. In any event, it is well-settled that a petitioner is bound by the sworn statements which she makes during a properly conducted Rule 11 hearing and as this Court found during sentencing, and reaffirms herein, Petitioner's Rule 11 hearing was properly conducted therefore this late, and frankly incredible contention, must fail. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

Second, Ms. Parrott testified during the evidentiary hearing that she made no such promise to care for Petitioner's child for the duration of Petitioner's incarceration, or at all for that matter, and the Court finds Ms. Parrott's testimony credible, and further notes that Petitioner, while able to present testimony during the hearing, declined to do so.

For the reasons stated, this argument will be denied.

C.      Ground Three

In her final claim, Petitioner contends that she felt intimidated when she made the decision to terminate Mr. Adolf while he was representing her prior to the return of her indictment. As a consequence, Petitioner argues, she incriminated herself before the grand jury in her testimony when she was proceeding *pro se* which caused her to earn a two-level enhancement for obstruction of justice. (Id., § 2255 Motion at 7).

The record in this matter demonstrates that on February 18, 2011, Mr. Adolf filed a

motion at Petitioner's direction and prior to the filing of Petitioner's indictment, for an *ex parte* inquiry into status of counsel and explained that Petitioner was dissatisfied with his performance and she wished to have new counsel appointed. (3:10-mc-00167, Doc. No. 1).

U.S. Magistrate Judge David Cayer conducted the *ex parte* hearing on the motion. Petitioner noted her concern that Mr. Adolf was informing AUSA Ferry that she did not want to cooperate in the investigation, and that if true, his disclosures might hurt her chances of reaching a favorable plea agreement. Petitioner expressed concern that Mr. Adolf maintained to AUSA Ferry that Petitioner was not being truthful with him and Petitioner stated that she wanted to cooperate with the Government and provide assistance with its criminal investigation. Petitioner also admitted that Mr. Adolph informed her that if she provided what he believed to be false information to the Government that it would be against her interest.

Petitioner asserted her desire to fire Mr. Adolf during the hearing and proceed *pro se* in her effort to assist the Government and Judge Cayer entered an order finding that as Petitioner had no Sixth Amendment right to counsel prior to indictment, Mr. Adolph should be discharged and Petitioner would be free to contact the Government. (3:11-cr-00122, Doc. No. 56: Tr. of *Ex Parte* Hearing; 3:10-mc-00167-RJC-DCK, Doc. No. 1: Motion for Inquiry into Status of Counsel; Doc. No. 2: Order).

Petitioner's argument fails here because first, she did not have a Sixth Amendment right to counsel prior to indictment and although there was an ongoing investigation, Petitioner was not being prosecuted at that time. In other words, because she had no constitutional right to counsel, she had no constitutionally protected right to competent counsel. Second, Judge Cayer's findings make clear that Petitioner wished to assume full control over her case and in fact she

11

chose to discharge Mr. Adolf because she did not agree with his advice.

For these reasons, this claim will be denied.

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 Motion is without merit and it will be denied and dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**. (Doc. No. 20).

2. Petitioner's Motion for Appointment of Counsel is **DENIED**. (Doc. No. 27).

3. Petitioner's § 2255 Motion to Vacate is **DENIED** and **DISMISSED with prejudice**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**IT IS SO ORDERED.**

Signed: August 26, 2015

Robert J. Conrad, Jr.
United States District Judge